1   DAVID S. WILSON, III, (No. 174185)
    **FEDERAL EXPRESS CORPORATION**
2   2601 Main Street, Suite 340
    Irvine, CA 92614
3   **Telephone: 949.862.4656**
    **Facsimile:  949.862.4605**
4   **dswilson@fedex.com**

5   SANDRA C. ISOM, (No. 157374)
    **FEDERAL EXPRESS CORPORATION**
6   3620 Hacks Cross Road
    Building B, Third Floor
7   Memphis, Tennessee 38125
    **Telephone:   901-434-8600**
8   **Facsimile:   901-434-9271**
    **scisom@fedex.com**
9

10  Attorneys for Defendant
    FEDERAL EXPRESS CORPORATION
11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                    WESTERN DIVISION

15  VINCENT BROWN, JOSE          | CASE NO.: CV07-5011 DSF (PJWx)
    ROBERT ROJAS, DEBORAH        |
16  SNYDER, CHARLES WALKER,      | Assigned for all purposes to the Honorable
    MARK B. TOVSEN, ROBERT       | Dale S. Fischer
17  ARMAN, JOHN O'NEIL, ANDRE    |
    D. LAWSON and GREGORY A.     | **DEFENDANT FEDERAL EXPRESS**
18  SORRELLS, individually and on | **CORPORATION'S OPPOSITION TO**
    behalf of all other similarly situated | **PLAINTIFFS' MOTION FOR CLASS**
19  current and former employees, | **CERTIFICATION**

20                    Plaintiffs,   | Complaint Filed: July 3, 2007

21      vs.                        | Hearing:  February 25, 2008

22  FEDERAL EXPRESS              | Time:  1:30 p.m.
    CORPORATION and DOES 1       |
23  through 10, inclusive,        | Courtroom:  840

24                    Defendants.

25

26

27

28

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION    CV07-5011 DSW (PJWx)

TABLE OF CONTENTS                                      Pg. Nos.

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ......  1

II.     STATEMENT OF FACTS ...............................  4

        A.    The Company .................................  4

        B.    FedEx's  Time-keeping System for Drivers ...............  5

        C.    FedEx's Meal and Rest Break Policy ......................  5

        D.    FedEx Time-keeping Data .................................  8

        E.    Testimony of Plaintiffs .....................................  9

        F.    Ramp Transport Drivers ...................................  11

              1.    Shuttle Drivers ........................................  12

              2.    Heavyweight Couriers...............................  14

              3.    Long-haul RTDs ......................................  16

              4.    Hostlers ...............................................  16

        G.    Couriers .....................................................  17

III.    LEGAL ARGUMENT .......................................  18

        A.    Class Certification Standard ..............................  18

        B.    Employers must Provide, But Need Not Enforce Meal
              And Rest Breaks Under California Law ..................  19

        C.    Certification is Inappropriate Because Individual
              Inquiries Predominate ......................................  26

        D.    The Superiority Requirement Fails as Adequate
              Alternatives Exist ...........................................  32

        E.    Plaintiffs' Injuries Are Not Typical To The Class, Nor
              Are Plaintiffs Adequate Representatives .................  33

IV.     CONCLUSION .................................................  35

i

1    **TABLE OF AUTHORITIES**       Page Nos.

2                          **CASES**

3   *Allied Orthopedic Applicances, Inc., v. Tyco Healthcare Group L.P.,*

4   2007 U.S. Dist. Lexis 95761 (C.D. Cal. Dec. 21, 2007)......................33

5   *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715 (2004)............ 32-33

6   *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ............................ 19

7   *Blackwell v. Skywest Airlines,*

8        2007 U.S. Dist. LEXIS 67949, (S.D. Cal. Aug. 30, 2007)............. 29

9   *Fitch v. Select Products, Inc.*, 36 Cal.4th 812 (2005) ......................... 22

10   *Hanon v. DataProducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .................29

11   *Hicks v. Kaufman and Broad Home Corp.,*

12        89 Cal.App.4th 908 (Cal. Ct. App. 2001) ...................................19

13   *In re Beer Distribution Antitrust Litigation,*

14        188 F.R.D. 549 (N.D. Cal. 1998) .........................................33

15   *Jiminez v. Domino's*, 238 F.R.D. 241 (C.D. Cal. 2006) ...............19, 31, 32

16   *Lanzarone v. Guardsmark Holdings, Inc.,*

17        2006 U.S. Dist. LEXIS 95785, (C.D. Cal. Sept. 7, 2006) ..... 22, 27, 29

18   *Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1983) ...................... 25

19   *Lolley v. Campbell*, 28 Cal. 4th 367 (2002) .......................................32

20   *Maddock v. KB Homes,*

21        2007 U.S. Dist. LEXIS 58743, (C.D. Cal. July 9, 2007)................ 33

22   *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094 (2007) ................. 23

23   *Sepulveda v. Wal-Mart Stores, Inc.,*

24        237 F.R.D. 229 (C.D. 2006) ...................................... 29, 30

25   *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, (N.D. Cal. 2007) .........22, 23

26   *Wyler Summit P'ship v. Turner Broad. Sys., Inc.,*

27        135 F.3d 658 (9th Cir. 1998) ............................................ 22

28

*Zinser v. Accufix Research Inst. Inc.,*

    253 F.3d 1180,  as amended, 273 F.3d 1266 (9th Cir. 2001) ...........19


**STATUTES**

8 Cal. Code Regs. § 11090(11) ………………………………………….. 21

8 Cal. Code Regs. § 11090(12) …………………………………………..21

California Labor Code § 512(a) …………………………………20, 24, 30

California Labor Code § 512(b) ……………………………………….. 24


**RULES**

Fed. R. Civ. Proc. 23(b)(3) ……………………… 1, 4, 18, 19, 26, 29, 31, 32

Fed. R. Evid. 407…………………………………………………… 24

Fed. R. Evid. 701-705 ………………………..…………………… 2

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

CV07-5011 DSW (PJWx)

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' motion to certify a class that includes Couriers and Ramp Transport Drivers (RTDs) (collectively, "drivers") regarding unpaid meal breaks and paid rest breaks should be denied because it is fatally flawed. Plaintiffs are unable to establish all certification requirements pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs' conclusion that certification is appropriate is only possible due to an erroneous interpretation of an employer's break obligations under California law. This faulty premise infected Plaintiffs' analysis, rendering it hopelessly deficient. A proper interpretation of those obligations establishes that certification is not appropriate because the Rule 23(b)(3) analysis results in the inescapable conclusion that individual issues predominate over any common questions.

California employers need only provide (offer or make available) breaks to employees, depending upon the length of their shift. FedEx has no obligation to guarantee that breaks are actually taken by specific times. FedEx need only provide the ability for the employee to commence the break. *See* Cal. Lab. §512 (a) and (b). FedEx should not be liable for a driver's voluntary decision regarding the taking and timing of a break. The issue is whether FedEx adequately informed and allowed drivers to be free of job duties for the applicable break time. Plaintiffs cannot dispute that FedEx has always had a policy that breaks are to be provided to drivers and that this policy has been adequately communicated to employees.

Plaintiffs' motion is premised on the mistaken assumption that California employers have a duty to guarantee or require that all of their non-exempt hourly employees take a meal break within five hours of the commencement of shifts exceeding five hours, and a ten-minute rest break during the first four hour work segment of shifts exceeding four hours. Adopting Plaintiffs' incorrect assumptions

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

1

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION            CV07-5011 DSW
(PJWx)

1    would result in the application of a strict liability standard.  Plaintiffs seek certification

2    solely on the idea that FedEx is strictly liable for:  1) unpaid meal breaks that were not

3    commenced (or recorded) by the fifth hour for shifts exceeding five hours, regardless

4    of the reason; 2) paid rest breaks that were not commenced (or recorded) during the

5    first four hour segment of shifts exceeding four hours, regardless of the reason; and 3)

6    the absence of breaks, regardless of the reason.

7         Plaintiffs maintain that the only proof needed to establish their claims is the

8    timecard records completed by the class members and archived by FedEx.  Plaintiffs

9    dubiously claim that they always accurately recorded the start and end times of their

10   shifts and breaks and assume that the other class members did so as well.  Plaintiffs

11   erroneously conclude from the data that FedEx had a policy and practice of not

12   guaranteeing that breaks were taken within the times specified by law.[1]

13

14        If the time records analyzed by Plaintiffs are probative of anything, it is that

15   breaks were not only provided, but that most drivers took advantage of the breaks

16   most of the time.  Indeed, the records show that for shifts exceeding six hours, 98.8%

17   of couriers' shifts and 99.2% of RTDs' shifts reflect at least one meal break of at least

18   thirty minutes.  With respect to rest breaks in shifts exceeding four hours, 72% of

19   couriers' shifts and 49.9% of RTDs' shifts reflect at least one recorded ten-minute rest

20   break.    The records do not, and cannot reflect whether drivers made voluntary

21   decisions regarding the taking or timing of any particular break.  Likewise, the records

22   do not and cannot reflect whether any driver's taking or timing of a break on a

23   particular day was due to FedEx not making the break available.  This determination

24

---

25   [1] Plaintiffs' rely upon a questionable analysis conducted by a "consultant," Mr. Ching,
     rather than a statistical expert.  Plaintiffs do not even attempt to qualify Mr. Ching as
26   an expert.  Because the analysis does not constitute admissible expert opinion, is not
     appropriate subject matter for a lay opinion, and is based upon an erroneous
27   interpretation of the law, the Court should ignore Plaintiffs' analysis.  See Fed. R.
     Evid. 701-705.
28

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

2

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION          CV07-5011 DSW
                                                                                        (PJWx)

1    requires individual inquiries.

2          Moreover, Plaintiffs' testimony does not advance their cause.  The seven named

3    RTD Plaintiffs have spent their entire RTD careers in California at only one discrete

4    location in Ontario.  Likewise, the two named courier Plaintiffs work in Ontario and

5    Rialto.  Plaintiffs did not provide any declarations or testimony from members of the

6    putative classes, only their own boilerplate, anecdotal declarations which contain,

7    word for word, identical conclusory allegations, in the exact same sequence, and

8    which are wholly devoid of any facts.

9          Common issues of fact do not exist due to the numerous different courier and

10   RTD job classifications (each of which encompasses unique job responsibilities), the

11   many different types of routes (some of which have much more downtime than others,

12   but all of which vary greatly on a daily basis), the different managers who supervised

13   each driver, the different personal preferences drivers had concerning the timing of

14   their meal and rest breaks (i.e., many drivers prefer to skip the break or take it at a

15   time that is most convenient for them), and the drivers' practice regarding the

16   recording of breaks, among many other differences existing across the classes.  This is

17   demonstrated in the declarations of numerous drivers at various California locations,

18   including Plaintiffs' stations.[2]  Moreover, the drivers, including Plaintiffs, do not want

19   to be subject to mandatory breaks that must be taken by a specific time because it

20   interferes with their ability to efficiently complete their job duties, and conflicts with

21   their personal desires regarding the taking and timing of breaks.  In other words,

22   Plaintiffs utterly failed to present any relevant common proof among all drivers, and

23   thus, fail to meet their burden of demonstrating that common issues predominate.

24

25

26

27   _____
     [2] Defendant's witness declarations are attached to the declaration of David S. Wilson
     and are accompanied by a table summarizing their contents, using color coding for the
28   Court's ease of reference.  Additional declarations from drivers are attached to the
     declaration of Sandra C. Isom.

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

3

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION        CV07-5011 DSW
                                                                                    (PJWx)

Furthermore, a class action is not a superior method for adjudicating the claims at issue pursuant to Rule 23(b)(3).  Plaintiffs have numerous alternatives available to seek redress if they truly believe that a violation has occurred and they have been injured.  Each individual driver, however, has their own opinion of the benefit of the Plaintiffs' interpretation of the law.  As such, each driver has an individual and independent interest in controlling decisions with respect to litigation, including the right not to litigate the issue against FedEx, because they do not agree with Plaintiffs' strained interpretation of the law.

Plaintiffs' motion fails for the additional reason that Plaintiffs are not adequate representatives pursuant to Rule 23(a)(4) because drivers who continue to work for FedEx do not want Plaintiffs' interpretation to succeed.  Their interests are clearly adverse to the interest of the named Plaintiffs.  Interestingly, even the named Plaintiffs admit that being forced to take a break by a specific time creates a hardship.  Yet they are happy to do it as long as FedEx pays them an additional hour of pay when they do not.  Such a requirement creates a perverse incentive for Plaintiffs to violate the break requirements in order to obtain an additional hour of pay.

## II.   STATEMENT OF FACTS

### A.   __The Company__

FedEx is in the business of shipping packages and other freight to its customers on an express basis.  Most of its freight is delivered by a time certain on the day following its receipt by FedEx.  FedEx is able to meet its commitments through a vast network of planes, trucks, buildings and employees located throughout the world. FedEx's truck fleet consists of many different types of vehicles that are operated by many different classifications of drivers.  The largest trucks in FedEx's fleet serve as the conduit for freight between FedEx's airport facilities, known as ramps, and the

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

4

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION          CV07-5011 DSW
(PJWx)

stations outside of the airport where the freight is sorted and loaded onto smaller delivery vans and trucks for delivery to its final destination. (Eatros Dec. ¶¶ 4, 5). The first line of management at FedEx consists of Operations Managers, who report to Senior Managers, the highest level of on-site management. Senior Managers report to Managing Directors, who report to upper management. (Eatros Dec. ¶ 6). All of FedEx's locations have designated break rooms. (Eatros Dec. ¶ 43).

**B.** **FedEx's Time-keeping System for Drivers**

FedEx's drivers are responsible for recording their own work time and breaks manually on timecards and into PowerPads (formerly "SuperTrackers" or "Trackers") (collectively "trackers"). (Eatros Dec. ¶ 7). The beginning and end time of each shift and each activity occurring during a shift is documented on the timecard through various codes that are entered along with the time that a particular activity starts or ends. (Eatros Dec. ¶¶ 7-9). The beginning of a paid rest break is denoted by a "code 28" and the end time is denoted by a "code 29." Similarly, the beginning of an unpaid meal break is denoted by a "code 13" and the end time is denoted by a "code 14." (Eatros Dec. ¶ 8). This data is loaded into a FedEx computer database ("FAMIS"), typically through the use of the driver's tracker. (Eatros Dec. ¶ 9). The only RTDs who utilize a tracker are heavyweight couriers. All other RTDs use a handwritten time card. Drivers are trained to enter work and break codes contemporaneously with the event. Some drivers, however, enter all the codes at the end of the day, which can result in a break entry that contains an erroneous time because the driver may erroneously estimate break times. (Declaration of Ronald J. Carlson, ¶3, 5, 7).

**C.** **FedEx's Meal and Rest Break Policy**

All FedEx employees receive an Employee Handbook upon commencing employment and updated versions thereafter. The Handbook summarizes the most

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

5
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                   CV07-5011 DSW
(PJWx)

significant personnel policies and cites to the People Manual, where the policies can be found in their entirety.  All employees can access the People Manual through any manager, their Human Resources representative, or via the company intranet.  (Eatros Dec. ¶¶ 52-55).

The November 2003 Employee Handbook states, in relevant part, under the heading **Meal/Rest Breaks-PEOPLE 10-95**:

> In states where meal breaks are mandatory, employees are provided meal breaks according to each state's particular laws.  Employees are not expected to or allowed to work during their meal break.  Full-time employees have a non-paid meal break that normally varies as determined by location or department.  Meals are normally at mid-shift, an hour before or after the middle of the shift.  Meal breaks for part-time employees are scheduled according to state law and work scheduling requirements.

Policy 10-95, as contained in the November 2003 People Manual, states, in relevant part, next to the heading **Meals/Rest Breaks**:

> FedEx Express provides a meal period for eligible employees.  In states where lunch periods are mandatory, employees are provided lunch breaks according to each states' particular laws.  Some states also require rest breaks.  Managers review the *Personnel Legal Manual* for information concerning applicable state laws on lunch periods and rest breaks.  ¶Full-time employees are normally scheduled to work 8- or 10-hour shifts and should be provided a meal period of 30 minutes to 1 hour in duration.  Depending on the length of the work shift, part-time, casual, and temporary employees are provided

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION       CV07-5011 DSW
(PJWx)

meal periods in accordance with state laws and work scheduling requirements. ¶Meal periods should be scheduled at mid-shift (1 hour before or after the middle of the shift). Meals should be eaten in designated areas away from the employee's work station or area. ¶<u>Employees are advised of meal periods by their manager</u>. Meal periods are nonpaid and are normally 30 minutes to 1 hour in duration, as determined by location or departmental guidelines. (Emphasis added).

The People Best Practices Manual is distributed to all managers and coaches them how to properly apply policies. The August 2000 People Best Practices Manual states, under the heading **Scheduling Meal Breaks:** "<u>The meal should normally occur between the third and sixth hour as the work load permits.</u> Meal breaks taken near the beginning or end of a shift are discouraged unless required by an operational emergency." (Emphasis added). Under the heading **Compliance with State Laws**, the People Best Practices Manual states: "In states where meal breaks are regulated by state law, employees must be provided meal breaks in compliance with the law. Refer to the *Personnel Legal Manual* for details." Under the heading **Management Responsibilities**, the People Best Practices Manual states: "Management is responsible for including a meal break and specifying the amount of time to be taken in the employee's work schedule." Finally, under the heading **Employee Responsibilities**, the People Best Practices Manual states:

Employees are required to take scheduled meal breaks. Prior management approval is required for an employee to work instead of taking the normal meal break. The approving manager must indicate approval by signing the employee's timecard. In all cases, employees

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

7

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION        CV07-5011 DSW
(PJWx)

1    must enter the correct codes on their time cards to indicate the length

2    of their meal break.   ¶Prior management approval is required if an

3    employee is unable to take their required meal break.  The approving

4    manager must indicate approval by signing the employee's time card.

5    In all cases, the employee must enter the correct codes on their time

6    card.

7    (Eatros Dec. ¶¶ 56-64; Brown Dec. ¶ 32).

8         In addition to written policies, drivers are also routinely informed by

9    management they are entitled to take breaks. (Eatros Dec. ¶ 65).  In declarations

10   obtained by FedEx, 93 drivers state that they were informed by management that they

11   were entitled to take meal and/or rest breaks as specified by California law.   In

12   addition, 73 drivers state that they in fact took their meal and/or rest breaks as

13   specified by California law, while 41 declarants explained that they could have taken

14   their meal and/or rest breaks as specified by California law, but voluntarily chose not

15   to.  (Wilson Dec. Exh. A).  Memoranda informing employees of their break rights

16   were provided long before the relevant class period, in addition to counselings when

17   employees failed to take a break.  (Declaration of Leila Hassan, ¶¶ 3-6, Exh. 1-4).

18   **D.    FedEx Time-keeping Data**

19        The fact that drivers were notified of their meal and rest break rights, as well as

20   provided the breaks, is further evidenced by the declaration of Defendant's expert,

21   Michael Ward, who analyzed the same FAMIS time-keeping data as Plaintiffs'

22   "consultant."  Dr. Ward determined that among shifts exceeding six hours in length,

23   99.2% of RTD shifts, and 98.8% of courier shifts, reflect at least one meal break that

24   lasted 30 minutes or longer.  Moreover, 69.5% of RTD shifts, and 53% of courier

25   shifts, reflect meal breaks that started prior to the completion of the sixth hour.

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

8

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

CV07-5011 DSW
(PJWx)

(Ward Dec. ¶8-9). Dr. Ward also determined that 72% of RTD shifts and 49.9% of couriers shifts exceeding four hours in length reflect at least one recorded rest break. (Ward Dec. ¶10). The data do not, however, disclose the reasons for the timing of the break or why a break was not taken. (Ward Dec. ¶7).

**E.   Testimony of Plaintiffs**

All seven RTD Plaintiffs spent their entire California RTD careers at only one discrete location in Ontario (i.e., the ONTRT facility, which has changed buildings a couple of times, resulting in actual movement of the facility of only a few miles). (Snyder pp. 10:1-3, 10:10-11, 11:4-13:10; Brown pp. 11:6-8, 11:19-20, 12:2-9, 16:3-17:13; Walker pp. 10:15-12:4; Tovsen pp. 10:23-11:8, 13:10-17; Rojas pp. 10:4-12:18; 16:13-25; 19:25-20:3; Firman pp. 13:12-14:11; O'Neill pp. 22:8-23:3). These Plaintiffs admittedly have no idea what the meal and rest break practices are at other RTD locations in California. (Snyder p. 90:4-7; Walker p. 98:17-20; Tovsen p. 107:10-13; Rojas pp. 83:23-84:2). One of the two courier Plaintiffs has worked in Ontario since 1989, and the other courier Plaintiff has worked exclusively in Ontario and next door in Rialto since 1997. Both Ontario and Rialto are located in the extreme southwest corner of San Bernardo County. (Lawson pp. 6:20-22, 10:17-19; Sorrells pp. 12:17-13:12). The knowledge of these two Plaintiffs about the meal and rest break practices at other locations is similarly limited. (Sorrells p. 72:17-21).

At least two Plaintiffs acknowledged that there were occasions when they could have taken meal breaks within the first six hours and voluntarily chose not to. (Rojas pp. 123:16-129:6, Exh. O, 129:19-132:18, Exh. Q; Lawson pp. 58:16-60:2). Likewise, some Plaintiffs admit that there were shifts where they could have taken ten minute rest breaks and elected not to for voluntary reasons. (Brown pp. 76:12-21, 132:10-133:17, 145:9-20, Exh. L; Walker p. 116:14-19; Rojas pp. 110:10-112:4, Exh.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

L, 114:12-118:25, Exh. M, 120:1-123:15, Exh. N; Lawson pp. 62:18-63:5).

Plaintiffs admit that they drove alone and that their interaction with management while they were on the road was rare; they were not micro-managed. (Snyder pp. 105:5-16, 106:10-18; Brown pp. 151:7-12, 161:17-162:1; Walker pp. 88:17-89:24; Tovsen pp. 136:20-137:2, 150:5-23; Rojas pp. 78:22-79:1-20, 84:16-85:5; Lawson pp. 106:3-16, 108:21-109:15; O'Neil p. 109:5-7; Sorrells pp. 38:24-39:9; 64:2-65:3; Firman pp. 38:12-22, 105:12-22, 114:23-115:4, 126:8-10).   Both courier and RTD Plaintiffs admit that they were not required to code their rest breaks. (Brown pp. 97:22-98:23; Walker pp. 23:21-25:1, 129:16-20; O'Neill pp. 47:9-21, 58:4-59:1; Lawson pp. 48:2-4, 49:15-50:3).

Some Plaintiffs acknowledge that they were notified by management of their meal and/or rest break rights under California law.  (Brown pp. 78:24-81:16, 115:1-22; Walker pp. 28:19-29:5; Tovsen p. 81:4-21; Lawson pp. 41:19-47:6, 69:5-70:14, 88:7-89:17, 101:23-103:2; O'Neill pp. 147:14-148:10; Sorrells pp. 16:23-17:4; Firman p. 118:15-23).  All Plaintiffs admit that they received multiple Employee Handbooks throughout their careers and had access to all of FedEx's personnel policies through their access to the People Manual. (Snyder pp. 70:10-25, 71:14-21; Brown pp. 83:11-84:6; Walker pp. 33:19-34:10, 36:2-10; Tovsen pp. 91:9-92:4, 95:9-16; Rojas pp. 54:18-55:8, 57:15-24; Lawson pp. 71:11-72:17, 75:14-25; Firman pp. 62:10-64:17; Sorrells pp. 81:7-82:25; O'Neill pp. 96:10-98:18).  All Plaintiffs testified that they were never told by management that they could not take meal and rest breaks within the times specified by California law.  (Snyder pp. 84:20-24, 88:18-21, 111:24-112:15, 117:13-16; Brown p. 103:8-12; Walker pp. 29:9-17, 31:14-23, 93:15-94:1, 98:5-16; Tovsen pp. 88:21-90:2; Rojas pp. 53:22-54:17, 75:14-21; Lawson pp. 50:4-12, 55:7-15; O'Neill pp. 92:7-14, 123:1-12; Sorrells pp. 40:20-22, 72:9-16; Firman pp.

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

10
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION        CV07-5011 DSW
(PJWx)

76:6-10, 118:15-23).   In addition, Plaintiffs, who were familiar with FedEx's Open Door Policy, testified that they never complained to management or human resources that they were unable to take meal and rest breaks within the times specified by California law.   (Brown pp. 105:15-20, 113:23-114:5; Walker pp. 36:13-22, 42:12-25, 44:5-19; Tovsen pp. 103:21-105:22, 128:4-9; Rojas pp. 56:23-57:14; Lawson pp. 79:18-80:18; O'Neill p. 110:3-6; Sorrells p. 70:7-9; Firman pp. 38:25-39:6). Furthermore, Plaintiffs knew who the human resources representative assigned to their location was, regularly saw their human resources representative, and would have felt comfortable talking to their human resources representative about meal and/or rest break issues.   (Snyder p. 71:1-13; Brown pp. 86:12-87:10; Tovsen pp. 97:24-98:13; Rojas pp. 56:6-57:5; Lawson p. 77:5-15).

Three of Plaintiffs testified that they preferred FedEx's break practices prior to March 26, 2007, when they had greater flexibility concerning the timing of their meal breaks.   (Snyder pp. 93:14-94:4; Walker p. 77:2-12; Lawson p. 65:1-10).   Courier and RTD routes vary greatly from one day to the next--no two days are the same.   (Snyder pp. 55:21-56:10; Brown p. 157:19-23; Tovsen p. 202:21-24; Lawson p. 104:6-10; Firman pp. 35:23-36:14, 123:14-21).   When drivers feel that they have too much freight, or when they pick up unexpected stops, they are able to ask for help from managers or swing or float drivers, thereby reducing their work load to a manageable level. (Brown pp. 174:7-175:15; Walker p. 86:7-21; Lawson pp. 34:21-35:8).

### F.   **Ramp Transport Drivers**

There are four types of RTDs:   (1) station to ramp/ramp to station RTDs, or "shuttle" drivers; (2) heavyweight couriers, or pick-up and delivery ("PUD") RTDs; (3) long-haul RTDs; and (4) hostlers.   (Mason Dec. ¶ 14).   There were 921 RTDs employed during the class period designated by Plaintiffs (July 3, 2003 to March 25,

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

11
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION   CV07-5011 DSW
(PJWx)

2007).  (Ward Dec. ¶7).  RTD drivers are employed at 34 different facilities located throughout California, including San Francisco, Oakland, Sacramento, Fresno, Bakersfield, Los Angeles, San Diego, and numerous places in between.  (Declaration of Amanda Adams, ¶3).

RTDs are typically unaccompanied by, and rarely communicate with, management while on the road.  Therefore, management has very limited ability to control the on-road activities of RTDs or police their breaks.  (Mason Dec. ¶ 30).  RTDs have significantly more downtime within which to take breaks than couriers do.  The downtime a particular RTD has depends, in part, on their specific RTD category.  While all RTDs have more downtime than couriers, some types of RTDs have more downtime than others as demonstrated below. (Mason Dec. ¶ 16).

**1.      Shuttle drivers** shuttle freight between ramps, stations and certain high volume customer locations, using eighteen-wheel tractor-trailers.   In the early morning, shuttle drivers pick up freight at the ramp where it arrives by plane.  Before the shuttle drivers get to the ramp, each separate item of freight is packed by handlers into large containers, or "cans."  The tractor a shuttle driver operates is referred to as a containerized transport vehicle ("CTV").  After the shuttle drivers arrive at the ramp, the cans are loaded onto their trailers by handlers.  Shuttle drivers sometimes help push the cans from a castor deck (a flat surface covered with small rollers) onto their trailers.  This normally takes only a few minutes.  The trailers are then transported by shuttle drivers to stations for the morning sort, where the trailer is unloaded, which also normally takes only a few minutes, before departing the station to return to the ramp.  (Mason Dec. ¶¶ 17-20).

A typical a.m. shift for full-time shuttle drivers is 3 a.m. to 12:00 p.m. or 4 a.m. to 1:00 p.m.  Normally shuttle drivers make two round trips between the ramp and

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

12
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION          CV07-5011 DSW
(PJWx)

station(s), a "double turn," before 7:45 a.m.  All of the freight has to be to the stations by 7:45 a.m. so that it can be processed with the morning sort and depart the station on time to be delivered to customers by couriers.  Therefore, the portion of the shift preceding 7:45 a.m. is the most time-sensitive.  Nevertheless, there is almost always down time of thirty to ninety minutes or more after the shuttle driver arrives at the ramp to pick up his/her second load of cans.  This downtime frequently increases in duration when inbound flights are late, which is not uncommon.   Given this substantial downtime, it is always possible for shuttle drivers to take a ten minute paid break during their first four hour work segment.  In fact, shuttle drivers almost always take paid breaks of much longer than ten minutes during their first four hour work segment, but frequently neglect to code the breaks because they get paid whether the breaks are coded or not. (Mason Dec. ¶¶ 21-23).

During the afternoon, couriers return to the stations with packages picked up from customers.  This freight is not transported to the ramp in cans by shuttle drivers until about 5:00 p.m.  Therefore, the work that a.m. shuttle drivers do after 7:45 a.m. is much less time-sensitive.  They primarily spend the second half of their shifts staging trailers at customer locations with heavy volume (i.e., leaving empty trailers at those locations for the customers to fill up throughout the day), and making sure that each station has the right mix of cans (which are different shapes and sizes) for the expected volume of p.m. freight arriving at the station with couriers in the afternoon.  Providing the right mix of cans, known as the p.m. configuration, requires shuttle drivers to return the cans emptied at the stations in the morning to the ramp where they are exchanged for a different mix of empty cans that are then returned to the stations for the p.m. configuration.  Since the work pace for a.m. shuttle drivers slows substantially after 7:45 a.m., there is always plenty of time for breaks as specified by

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

13

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION          CV07-5011 DSW
(PJWx)

the law.  (Mason Dec. ¶¶ 25-27).

Shuttle drivers on the p.m. side do roughly the same job as the a.m. shuttle drivers, but in reverse order.  They help reconfigure stations during the first part of their shifts and, beginning at about 5:00 p.m., transport freight from stations and customer locations to the ramp.  Shuttle drivers on the p.m. side have downtime comparable to the a.m. RTDs, and therefore have more than enough time for breaks as specified by law.  (Mason Dec. ¶¶ 28, 29).

**2.      Heavyweight couriers** are assigned to off-airport facilities called heavyweight hubs.  Their job is similar to that of couriers assigned to stations with at least three significant differences.  First, individual items of freight weigh one-hundred and fifty pounds or more, whereas couriers assigned to stations deliver packages as small as an envelope.  Second, heavyweight couriers average about twelve stops per day and 1.5 stops per hour, whereas couriers assigned to stations average roughly one-hundred stops per day and make many more stops per hour.  Third, heavyweight couriers drive eighteen-wheel trucks, while couriers assigned to stations drive delivery vans and smaller trucks or, in the case of foot couriers, no vehicle at all.  (Mason Dec. ¶ 31).

Heavyweight couriers generally make deliveries in the morning and "pickups" in the afternoon.  Before going out on the road, the freight is sorted at the hub, placed on pallets and loaded by forklift onto each heavyweight courier's truck.  Some heavyweight couriers help with the sort and loading, while others do not.  Customers sometimes help unload deliveries and load pickups at the customer location by forklift.  Sometimes the heavyweight courier loads and unloads freight at the customer location with a pallet jack.  (Mason Dec. ¶ 32).

Heavyweight couriers drive different types of routes.  Routes with a relatively

small geographic area are classified as H1 routes and some routes with larger geographic areas are classified as H2 routes. Heavyweight couriers on H1 routes have to make their deliveries by 10:30 a.m., noon, and 3:00 p.m. The H2 routes differ in that they do not have 10:30 a.m. deliveries. (Mason Dec. ¶ 33).

Heavyweight couriers have regularly scheduled pickups each day, but they also sometimes make unscheduled or "on-call" pickups. This occurs when the customer calls FedEx on the day the freight needs to be shipped and schedules a pickup. Dispatch provides this information to the heavyweight couriers. Due, in part, to the small number of stops, heavyweight couriers have plenty of time for breaks at the times specified by law. Often, heavyweight couriers spend a majority of their time in the afternoons idly waiting for on-calls that never arrive. (Mason Dec. ¶¶ 34, 35).

Approximately every six months, Operations Managers go on "check rides" with heavyweight couriers to observe all of their daily work activities. One of the many purposes of a check ride is to make sure that the heavyweight courier being examined has sufficient downtime to commence his/her breaks within the times specified by law. Managers examine historical delivery and pick-up data for the route subject to a check ride to ensure that the check ride is conducted on a day in which freight volume is expected to be heavy. Senior managers review the check ride results and make adjustments to the driver's route if necessary. (Eatros Dec. ¶¶ 29-31).

On some days the volume of freight on a particular route is exceptionally heavy. Heavyweight couriers are usually able to detect this when they inspect the freight being loaded onto their trucks and can balance their routes by having the overflow handled by a driver on a neighboring route, "float" or "swing" drivers, or a manager. [3] Similarly, if a heavyweight courier receives on-calls that will be difficult

---

[3] Float and swing drivers are heavyweight couriers who are not assigned to a particular route. They assist other drivers where help is needed due to illness, vacation, or heavier than expected volume. (Mason Dec. ¶ 40).

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

1   to accomplish, he/she can call dispatch and request assistance from these same

2   sources.   Finally, if a courier believes that there is a systemic problem depriving

3   him/her of breaks, informal discussions with management and FedEx's Open Door

4   Policy are available to address the concern.   In that event, management will make the

5   appropriate adjustments to ensure sufficient downtime for breaks within the specified

6   times. (Mason Dec. ¶¶ 40-43).

7        **3.**     **Long-haul RTDs** transport freight in eighteen-wheelers between airports

8   or sorting facilities in one city and those in another that are in close enough proximity

9   that the freight can be transported overnight more economically by truck.   For

10  example, freight is frequently transported between Oakland and Los Angeles by long-

11  haul RTDs.   Long haul RTDs typically work eleven to twelve hour shifts, four days

12  per week.   The nature of a long-haul driver's shift is illustrated by the following

13  hypothetical:   Where freight is transported between cities A and B, using long-haul

14  RTDs, long-haul drivers in city A travel to a point half-way between the two cities

15  where they meet long-haul drivers from city B.   The drivers then exchange their

16  loaded trailers and return to their respective cities.   Accordingly, long-haul drivers

17  typically have only one stop during a shift and sufficient time for breaks specified by

18  the law. (Mason Dec. ¶¶ 44-46).

19  

20       **4.**     **Hostlers** do not go out on the road.   Rather, their job is to move trailers

21  around between loading bays and decks at ramps and heavyweight hubs. They do not

22  make pickups and deliveries.   Furthermore, as is the case with other types of RTDs,

23  hostlers regularly experience long periods of downtime throughout the day, as the

24  need to move trailers is not continuous.   Activity intensifies with the arrival of freight

25  and dissipates as freight departs.   Hostlers invariably have more than enough

26  downtime for breaks at the times specified by law. Hostlers also frequently take paid

27  

28  

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

16

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                CV07-5011 DSW
(PJWx)

1  breaks without coding them. (Mason Dec. ¶¶ 47-49).

2       Finally, there are RTD shifts that combine the above categories. For example,

3  sometimes an RTD will work as a heavyweight courier during the day and then

4  perform a shuttle run to the ramp in the evening. (Mason Dec. ¶ 50).

5       **G.   Couriers**

6       There were 5,700 Couriers employed during the relevant class period.

7  (Declaration of Michael Ward, ¶7). Couriers are employed at 80 different facilities in

8  every major city and dozens of smaller ones throughout California. (Declaration of

9  Amanda Adams, ¶3). The job functions of couriers, who are assigned primarily to

10 stations, are substantially similar to those of heavyweight couriers, with the exception

11 of the three significant differences described above. Check rides, route balancing and

12 the availability of the Open Door Policy ensure that couriers are afforded an

13 opportunity to take their breaks as specified by law. Significantly though, some routes

14 have more downtime and are easier to run than others. For example, some routes are

15 primarily residential, while others are primarily commercial. The types and sizes of

16 routes vary greatly. Some routes are in the city, and some are in rural areas, or

17 mountainous regions. On the commercial routes, many deliveries can be made at one

18 stop where, for example, small packages are being delivered to multiple suites in an

19 office complex. Other types of routes may require more driving time and fewer

20 deliveries and pickups, but more trips in and out of the truck. (Mason Dec. ¶¶ 52-54;

21 Brown Dec. ¶¶ 20, 23).

22       Couriers are provided stops per hour goals for each route which vary based on

23 the countless differences between routes that affect how fast stops can be safely

24 performed without jeopardizing safety and service, such as anticipated volume, the

25 distance between stops, and the need for a courier to have sufficient break time as

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

17

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION     CV07-5011 DSW
(PJWx)

required.  Couriers have a stronger incentive than RTDs to code their rest breaks because breaks are factored into an accurate assessment of the courier's productivity. RTDs do not have similar stops per hour goals due to their different duties and different types of freight handled.  If a courier takes a rest break but does not record it, the courier's productivity records could mistakenly reflect the impression of decreased efficiency or productivity.    Even so, the incentive to record rest breaks is less than for meal breaks because rest breaks are paid.  (Mason Dec. ¶¶ 55-58).

The standard delivery commitment times for couriers in large urban areas, wherein routes are usually smaller in geographic area and denser in population, is 10:30 a.m., 3:00 p.m. and 4:30 p.m.  The commitment times in more remote areas begin later than 10:30 a.m.  Couriers drive alone and are typically unaccompanied by, and rarely communicate with, management while on the road.    Therefore, management has very limited ability to control the on-road activities or police the breaks of couriers.  (Brown Dec. ¶¶ 23-25).

The nature and demands of routes, both for couriers and heavyweight couriers, differ, sometimes dramatically, from day to day with variations in volumes and stops. The number and location of stops, as well as the weight, size and shape of packages, changes daily.  (Mason Dec. ¶ 59).  Floaters and swing couriers may have different routes each day because they assist with excess volumes or on uncovered routes due to illness or other reasons.  (Mason Dec. ¶ 40).

## III.    LEGAL ARGUMENT

### A.    Class Certification Standard.

Pursuant to Fed. R. Civ. P. 23(b)(3), Plaintiffs bear the burden of establishing that class certification is appropriate by showing that common issues of fact or law predominate over issues that affect only individual class members, and that a class

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

18

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION        CV07-5011 DSW
(PJWx)

action is superior to other available methods for the fair and efficient adjudication of the controversy. *Zinser v. Accufix Research Inst. Inc.*, 253 F.3d 1180, 1186, as amended, 273 F.3d 1266 (9th Cir. 2001).  A court "must first examine the substantive issues raised by the plaintiffs and second inquire into the proof relevant to each issue" to determine whether common issues predominate.  *See Jiminez v. Domino's*, 238 F.R.D. 241, 251 (C.D. Cal. 2006).

First, FedEx's meal and rest break obligations under California law must be accurately identified.  *See Hicks v. Kaufman and Broad Home Corp.*, 89 Cal.App.4th 908, 916 (Cal. Ct. App. 2001).  In order to determine whether common issues of law or fact predominate, "the trial court must examine the issues framed by the pleadings and the law applicable to the causes of action alleged." *Id.*  Courts are required to consider the nature and range of proof necessary to establish the allegations. *Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir. 1975).  Plaintiffs urge a misinterpretation of California law, asserting without authority that breaks must be taken by a certain time as opposed to being provided within a certain time. Having failed to examine the necessary proof relevant to the substantive issues, Plaintiffs erroneously concluded that common issues predominate and that a class action is a superior method for adjudicating Plaintiffs' claims.

When conducted under the correct interpretation of California's break requirements, the Rule 23(b)(3) analysis becomes more complex and results in the inescapable conclusion that individual issues predominate.

**B.   Employers Must Provide, But Need Not Enforce Meal and Rest Breaks Under California Law.**

In the absence of California Supreme Court precedent, this Court must apply the rule it believes the court would adopt under the circumstances. *See Wyler Summit*

*P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998).  Nothing in California law supports Plaintiffs' claim that FedEx is required to guarantee or ensure that all of its non-exempt employees take meal and rest breaks by certain times.

California Labor Code Section 226.7 states:

(a) No employer <u>shall require</u> any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.   ¶(b) If an employer fails to <u>provide</u> an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not <u>provided</u>. (Emphasis added).

California Labor Code Section 512(a) states, in relevant part:

An employer may not employ an employee for a work period of more than five hours per day without <u>providing</u> the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by the mutual consent of both the employer and the employee. (Emphasis added).

IWC Wage Order Number 9, which is the IWC Wage Order that applies to the transportation industry, states, in relevant part:

(A) No employer shall employ any person for a work period of more than (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

CV07-5011 DSW (PJWx)

consent of the employer and the employee…¶(D) If an employer fails to <u>provide</u> an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not <u>provided</u>.

8 Cal. Code Regs. § 11090(11) (emphasis added).

The rest break provisions of Wage Order No. 9 state:

(A) Every employer shall <u>authorize and permit</u> all employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The <u>authorized</u> rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.  However, a rest period need not be <u>authorized</u> for employees whose total daily work time is less than three and one-half (3½) hours.  <u>Authorized</u> rest period time shall be counted as hours worked for which there shall be no deduction from wages.  ¶(B) If an employer fails to <u>provide</u> an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not <u>provided</u>.

8 Cal. Code Regs. § 11090(12) (emphasis added).

California law does not impose a higher burden on employers with respect to meal breaks than is required for rest breaks.  The statutory language is the same with respect to both paid rest and unpaid meal periods.

The objective of statutory construction is to determine the intent of the

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION    CV07-5011 DSW (PJWx)

enacting body so that the law may receive the interpretation that best effectuates that intent. "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls.

*Fitch v. Select Products, Inc.*, 36 Cal.4[th] 812, 818 (2005) (citations omitted).

The language of Section 226.7(a), which states that no employer <u>shall require</u> any employee to work during a break, is clearly inconsistent with Plaintiffs' contention that meal and rest breaks must be taken by certain times. The plain language of the statutes and Wage Order requires only that employers <u>provide</u> or "authorize and permit" employees to take rest breaks in accordance with its terms. The term "provide" is defined in Merriam-Webster's Collegiate Dictionary (11th Ed. 2006) as "to supply or <u>make available</u>." (Emphasis added). It does not suggest any obligation to ensure employees take advantage of what is made available to them. Therefore, under California law, rest breaks need not be enforced or actually taken. *Lanzarone v. Guardsmark Holdings, Inc.*, 2006 U.S. Dist. LEXIS 95785, at **18, 19 (C.D. Cal. Sept. 7, 2006); *see also White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1086 (N.D. Cal. 2007) ("An employer is not subject to any sort of penalty or premium pay obligation if, an employee who was truly authorized and permitted to take a rest break, as required under the applicable wage order, <u>freely chooses without any coercion or encouragement</u> to forego or waive a rest period." (Emphasis supplied)).[4]

---

[4] Plaintiffs misunderstand FedEx's rest break obligations in another respect as well. Specifically, nothing in Section 226.7 or Wage Order No. 9 suggests that a rest period must be taken in the first four hour work segment. Rather, "[t]he authorized rest

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

Along these same lines, the *Starbucks* court agreed that California law does not require that employers guarantee that meal breaks are taken by specific times. *Id.* at 1088-89. Accordingly, the Court found that a strict liability standard does not apply to meal breaks. *Id.* at 1088. In making its ruling, the Court recognized that it was "Erie-bound" to interpret the law the way it believed the California Supreme Court would. *Id.* The Court stated that making employers "ensurers of meal breaks" would place an undue burden on employers whose employees are numerous or who, like Plaintiffs, do not remain in contact with their employer throughout the day. *Id.* at 1088. It would also encourage employees to violate company meal break policy in order to receive extra compensation under California wage and hour laws. *Id* at 1099. The Court stated "[t]his cannot have been the intent of the California Legislature, and the court declines to find a rule that would create such perverse and incoherent incentives." *Id.*

The language of Section 11 of Wage Order No. 9 comes closest to imposing a duty to enforce meal breaks, stating that "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes." However, this language is also consistent with an obligation "to offer or provide or authorize and permit a meal break," rather than to guarantee that one is actually taken. *See White v. Starbucks Corp.*, 497 F. Supp. 2d at 1089. The employer's obligation is to ensure that employees are free from its control for the break time, not to ensure that they do any particular thing during that time. *See Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1104 (2007) (if an employee is forced to forgo a meal period, they have been "deprived of the right to be free of the

period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" and shall be taken "insofar as practicable" in "the middle of each work period."

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

employer's control during the meal period."). Indeed, it is absurd to suggest that an employer must require an employee to spend their own free time in a particular fashion. This places the employer in the untenable and ridiculous position of "Big Brother," hovering over the employee during their "free" time to ensure that the employee is "free" from their employer.

With respect to when the meal break must be made available, non-exempt hourly employees need only be offered the opportunity to commence a meal break within the first six hours of shifts exceeding five hours in length, not the first five hours as Plaintiffs contend.[5] This is the only logical construction when California Labor Code Section 512(a) is read in conjunction with California Labor Code Section 512(b). Section 512(a) states that employees working shifts exceeding five hours are to be provided a thirty-minute meal break, without specifying when the break must be commenced, while subdivision (b) states "<u>Notwithstanding</u> subdivision (a)," the IWC has the authority to adopt orders <u>permitting</u> a meal break to commence <u>after</u> six hours of work.[6] (Emphasis added). The clear implication is that subdivision (a) requires

---

[5] Plaintiffs reference the automatic pay element in FedEx's time-keeping system that automatically issues an additional hour of pay to each driver per shift who does not take a meal break within five and one-half hours of beginning their shift if it exceeds five hours (assuming the shift is not completed by the sixth hour or no break waiver is on file). Automatic payment prior to the six hour mark is precautionary and not required by the law and FedEx has always complied with the law. Plaintiffs also reference a memorandum that was issued communicating FedEx's expectations of employees with respect to breaks. Neither FedEx's actions nor its communication to employees should substitute for a judicial interpretation of the law. Employers may afford their employees greater protections than the law requires without facing liability based upon the more generous standard utilized by the employer. To find otherwise is contrary to public policy, because it would discourage employers from offering such added protections. Further, liability does not result from an employer's misstatement of the law, particularly when such error provides the employee greater protections. Interpreting and applying the law for the purpose of establishing liability is within the sole province of the Courts. The memorandum does not contain an admission of wrongdoing and construing it as such renders it inadmissible as a subsequent remedial measure pursuant to Fed. R. Evid. 407.

[6] The definition of "permit" according to Merriam-Webster's Collegiate Dictionary (11th Ed. 2006) is "<u>to consent to expressly or formally</u>; <u>to give leave</u>; <u>to make possible</u>; <u>to give an opportunity</u>." (Emphasis added). The use of this term provides further support for FedEx's interpretation that meal break opportunities need only be

1   employers to make meal breaks available within the first six hours of shifts exceeding

2   five hours in length, not the first five hours of such shifts.

3       Liability for meal period claims should not, moreover, turn on "split-second

4   absurdities." *See Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1983).  The

5   principles that support a de minimis defense to overtime claims support its application

6   to meal period claims.  Where Plaintiffs took lunch breaks, but not precisely before

7   6:01, if any liability exists for such a break, it should not depend upon whether the

8   break started precisely at 6:00.  If the breaks started by 6:10, for example, the de

9   minimis doctrine should apply.

10

11      FedEx's <u>only</u> obligation with regard to meal breaks, therefore, is to offer or

12  make them available to drivers within the times specified by California law (by the

13  conclusion of the sixth hour of work for meal breaks).  FedEx anticipates that

14  Plaintiffs will argue in Reply that such a construction renders the provisions for

15  waiver of meal periods superfluous.  Those provisions, however, allow an employer to

16  require an employee to remain on duty when consent is given and certain

17  requirements are met.  In the absence of such a waiver, an employer must leave an

18  employee free to take a meal period within the time specified.

19      Unless the evidence on the merits shows that FedEx failed to provide adequate

20  time for Plaintiffs to take meal breaks during the requisite time of the shift in question,

21  Plaintiffs' claim should fail, particularly if Plaintiffs chose not to take advantage of the

22  break during the shift.   Even if Plaintiffs claim they had no time to take a break due

23  to the workload, FedEx is entitled to challenge this assertion and examine whether that

24  was truly the case or whether the employee was somehow at fault.  Plaintiffs have

25  presented no evidence to indicate that drivers were forced to forego breaks due to

26

27
_____

28  made available, but the employee is not required to utilize them.  Indeed, the IWC
    apparently has no authority to require that a meal break be taken.

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

alleged overscheduling or undue pressure to meet commitments.  On the contrary, drivers have always known breaks were available to them but do not want to be forced to take a break or take it by a specific time. (Wilson Dec. Exh. A).  The fact that FedEx is a time-sensitive business does not *per se* result in the denial of break opportunities.  Plaintiffs offer no evidence that FedEx demands that particular deliveries must be made before a break can be taken.

## C. Certification is Inappropriate Because Individual Inquiries Predominate.

The Rule 23(b)(3) analysis and conclusion is not nearly as simple as Plaintiffs suggest.  Plaintiffs' reference to records reflecting that breaks were not recorded or were not recorded by a specific time would not establish, without further individualized proof, that FedEx violated the law.  Accordingly, FedEx's FAMIS data is virtually useless as Plaintiffs' exclusive proof.  The trier of fact cannot determine from the records alone whether drivers omitted breaks or took them after the time they were to be made available, as a result of a supervisor's coercion, or the employee's voluntary choice, or any one of countless other individualized factors that could contribute to the taking and timing of a break.

FedEx is entitled to examine the individual circumstances of each shift in question for each driver at issue, a right that precludes certification.  Common questions of fact do not exist across the proposed classes due to the numerous different and unique courier and RTD job responsibilities, the many different types of routes (some of which have much more downtime than others, but all of which vary greatly on a daily basis), different management at each location which may have changed during the relevant class period, whether the driver waived the break, and the different personal preferences drivers had concerning the timing of their breaks,

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

26
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

CV07-5011 DSW
(PJWx)

1  among many other differences existing across the proposed classes.

2      For example, many drivers prefer the flexibility and discretion of taking their

3  lunch breaks when and where they prefer:   Noon would be better than earlier because

4  many customers are closed at noon (Crozier Dec. ¶5-6; Collier Dec. ¶21; Cordoba

5  Dec. ¶16), or because fast food restaurants are still serving breakfast if a courier must

6  eat lunch in mid-morning (Dixon Dec. ¶8-19).  Being forced to eat lunch at a specified

7  time does not work in this industry, is very frustrating and affects morale.  (Dunham

8  ¶18-20; Collier ¶17-19).  It interrupts the flow of delivery work (Adams Dec. ¶7) and

9  goes against the natural pause in work between deliveries and pickups (Morales Dec.

10  ¶10-12; Cervantes Dec. ¶13).  Delivery work is often unpredictable due to weather,

11  customer delays, security checks at Travis AFB of varying length or traffic delays,

12  and being required to stop during such a delay and eat lunch at a place not of one's

13  choosing rather than back at the station or at a preferred location is too rigid,

14  preventing the most efficient and effective performance of tasks and delivering the

15  best service to customers (Snodgrass Dec. ¶5; Crosby Dec. ¶8-17; Dixon Dec. ¶8-19;

16  Cervantes Dec. ¶16, 17; Collier Dec. ¶13-15; Cordoba Dec. ¶11-13).

17      Drivers feel break requirements are dictating the work rather than the work

18  dictating when the break is taken, negatively impacting their work and the freedom to

19  control their time as they prefer and creating more work and stress rather than

20  providing an actual break.  Some drivers prefer to shorten or skip a break altogether in

21  order to get off the clock and enjoy personal pursuits or be with family (Dixon Dec.

22  ¶8-19; Dotts Dec. ¶11-13; Cervantes Dec.¶11, 13; Collier Dec. ¶12-22; Cordoba Dec.

23  ¶10, 12-14, 18-25).

24      In *Lanzarone v. Guardsmark Holdings, Inc.*, 2006 U.S. Dist. LEXIS 95785

25  (C.D. Cal. Sept. 7, 2006), the Court properly denied certification after finding that a

FEDERAL EXPRESS
CORPORATION
2501 MAIN STREET
SUITE 340
IRVINE, CA 92614

27
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION     CV07-5011 DSW
(PJWx)

1   host of individual issues predominated. *Id.* at *13.  Significantly, the Court observed

2   that "[i]n an apparent attempt to suggest that some issues of liability can be addressed

3   for all class members at the same time," Plaintiff makes a blanket assertion that

4   Guardsmark has a "practice and policy of denying officers meal and rest periods . . ."

5   *Id.* at *11.  The Court observed, however, that the evidence presented by the parties

6   did not support this blanket assertion.  *Id.* at **11-12.  The Court explained that

7   certification is inappropriate where the "direct evidence and declarations submitted

8   compel the conclusion that Guardsmark has no policy that violates the law." *Id.* at

9   *12.  In that vein, the Court was unmoved by the Plaintiff's declarations which all

10  came from "one branch, and mostly at one account, and when viewed in the context of

11  the entire record . . . do not support a finding that the case presents the sort of

12  questions concerning general policies or systematic practices that might support

13  certification." *Id.*

14

15        Such is precisely the case here.  Plaintiffs have made blanket, conclusory, and

16  unsupported allegations of a statewide policy and practice of denying breaks, relying

17  upon evidence that is incredibly narrow in scope.  The seven named RTD Plaintiffs

18  have spent their entire RTD careers in Ontario.  None of them have worked at any of

19  the other 34 RTD locations distributed throughout the State.  Plaintiffs admit that they

20  have no idea what the break practices are at other RTD facilities.  Likewise, the

21  knowledge of the named courier-Plaintiffs is limited to Ontario and Rialto.  Plaintiffs

22  did not provide any declarations from potential class members, and their own

23  boilerplate, anecdotal declarations contain identical conclusory allegations wholly

24  devoid of any supporting facts.  In contrast, FedEx has provided over 80 declarations

25  from drivers in twenty different locations that establish breaks were provided as

26  required by law.

27

28

1    Plaintiffs' only attempt to introduce class-wide evidence consisted of its

2    analysis of class-wide timecard data.  Significantly though, the data does not establish

3    or even indicate that FedEx had a policy and practice of depriving its drivers of

4    breaks.  Instead, it corroborates the fact that breaks were properly provided because

5    99% of drivers recorded a meal break and a substantial majority recorded them by the

6    time specified in California law.  The fact that the percentages regarding the timing of

7    the breaks differ as between couriers and RTDs highlights the differences in their job

8    duties and personal preferences that may impact the taking and timing of a break.  The

9    fact that many couriers prefer to finish their P1 deliveries (10:30 a.m. commitment

10   time) and set up for the next delivery or pickup cycle prior to taking a break, whereas

11   RTDs have more downtime throughout their shifts, are the types of individual

12   inquiries which may explain why a higher percentage of RTD drivers begin their meal

13   break by the completion of the sixth hour of work.

14   

15        Accordingly, as was the case in *Lanzarone*, the "direct evidence and

16   declarations submitted compel the conclusion that [the employer] has no policy that

17   violates the law."  FedEx anticipates that Plaintiffs will argue in Reply that the

18   *Lanzarone* Court's analysis was inappropriate, because it focused too heavily on the

19   merits of the Plaintiff's claims.  Significantly though, sometimes the Court has to look

20   at the merits of the case when determining whether to grant certification.  *Sepulveda v.*

21   *Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 233 (C.D. Cal. 2006); *see also Hanon v.*

22   *DataProducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (Courts "are at liberty to

23   consider evidence which goes to the requirements of Rule 23 even though the

24   evidence may also relate to the underlying merits of the case. . . ").

25   

26        A very recent case puts any doubts to rest as to whether class certification is

27   appropriate.  Specifically, in *Blackwell v. Skywest Airlines*, 245 F.R.D. 453, 468 (S.D.

28   

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

29
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION     CV07-5011 DSW
(PJWx)

Cal. 2007), the Court denied certification under FRCP 23(b)(3) due, in part, to the fact that employees waived breaks (some waivers were oral while others were in writing) and sometimes had downtime sufficient to qualify as required breaks, making individual inquiries necessary.   The Court stated that the Defendant's list of individualized questions undermined the Plaintiff's blanket assertion of predominancy. *Id.* at *469.  The law does not require break waivers to be in writing. *See* Section 512(a) and Wage Order No. 9.  FedEx currently requires employees who desire to waive their right to a break to sign a written break waiver.  Prior to this requirement, waivers could have been oral or written.  Nonetheless, individual inquiries of drivers and managers would be necessary to determine which shifts could be impacted by the waiver and whether written or oral break waivers existed in relation to those shifts. Again, these are individual inquiries that Fedex is entitled to make, precluding certification.

The *Skywest* decision also makes it clear that the rest break class cannot be certified because the class members were never required to code their rest break time. *See id.* at 467.  Due to the nature of drivers' duties, FedEx prefers that its drivers record rest breaks for productivity and planning purposes.  Unlike meal periods, however, the law does not require that rest breaks be recorded.  It should thus follow that records reflecting rest periods, or the absence thereof, should not be available to Plaintiffs as a sword when they are not required in the first instance.

In addition, the misclassification cases Plaintiffs attempt to distinguish are instructive. *See Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 249 (C.D. Cal. May 5, 2006).

Even if the Court were to accept Levine's conclusion that there is likely to be little variance among [assistant manager (AM)] duties,

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

30
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION      CV07-5011 DSW
(PJWx)

1     this does not mean that none of the AMs were properly exempt....

2     Based on the evidence presented thus far, such proof will probably be

3     highly individualized. Indeed, Defendant has already submitted a

4     number of declarations stating that individual AMs performed

5     primarily exempt work. If these declarations are correct, then these

6     AMs are indeed exempt employees under California law, regardless of

7     any representational evidence to the contrary that Plaintiffs may

8     provide. Thus the question of how much time a given AM spent on

9     exempt or non-exempt duties remains an individual one.

10

11   *Id.*

12     Similarly, as recently recognized by the court in *Jiminez v. Domino's*, 238

13   F.R.D. 241 (C.D. Cal. 2006), "Domino's has a right to cross-examine each general

14   manager to determine whether there is liability as to that specific person. Because

15   each general manager's experience and time spent on the various tasks may differ, the

16   Court agrees that a class action trial will be unmanageable." *Id.* at 253. The Court

17   stated: "to determine which employees are entitled to overtime because of improper

18   classification is an 'individual, fact-specific analysis' . . . Because these questions and

19   issues of proof are so individualized, the Court cannot say that the common question

20   presented predominates." *Id.* at 251, 252. Likewise, in this case, FedEx is entitled to

21   cross-examine each driver to determine whether there is liability to that specific

22   person for a specific shift, which will involve individual credibility determinations,

23

24   another fact that concerned the Court in *Jiminez* and rendered class certification under

25   FRCP 23(b)(3) improper. *Id.* at 252.

26     Plaintiffs' own testimony reflects that the determination of whether they

27   believed breaks were made available to them varies by shift and they have admitted

28

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

31

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION   CV07-5011 DSW
(PJWx)

that they were able to take breaks.  In the end, Plaintiffs do not actually contend that breaks were not made available, but rather, that time-keeping records reflect they were not taken by a particular time.  In other words, Plaintiffs do not allege an injury in fact, but a technical violation regarding timing, which does not raise common questions of fact because drivers can choose whether and when to take their meal and rest breaks.

**D.      The Superiority Requirement Fails As Adequate Alternatives Exist.**

Here, class treatment is not a superior method for adjudicating the claims at issue.  Putative class members have numerous options available, including the right not to litigate because they do not desire Plaintiffs' interpretation of the law.[7]  Options available include various internal complaint processes (Open Door Policy, GFTP), as well as external agencies.  (Hassan Dec. ¶7, Exh. 5).  The DLSE administrative hearing option (a Berman hearing) "is conducted 'in an informal setting preserving the right[s] of the parties' and 'is designed to provide a speedy, informal, and affordable method of resolving wage claims.'"  *Lolley v. Campbell*, 28 Cal. 4th 367, 372 (2002).  A DLSE hearing "can be a quick procedure . . . and does present a viable alternative" despite "disadvantages inherent" in the proceeding.  *Jiminez v. Domino's,* 238 F.R.D. at 253-54.  Accordingly, the *Jiminez* Court found that because the manageability of the suit before it as a class action was questionable and because there were viable alternatives, certification under FRCP 23(b)(3) was inappropriate. *Id.* at 254.

As explained by Plaintiffs, the court in *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715, 745-46 (2004) did reject the notion that such a procedure was an adequate alternative under the facts of that case.  The court noted that the DLSE would be overloaded if it received 2000 individual claims. *Id.* Such a result is highly

---

[7] Opting out is insufficient to prevent the drivers from being subjected to an absurd break requirement if Plaintiffs prevail on a classwide basis.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION          CV07-5011 DSW (PJWx)

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

1   unlikely here.  In fact, the DLSE option is particularly suitable because many potential

2   class members do not want to be subject to Plaintiffs' interpretation of the law and

3   would likely never seek redress under such an interpretation.  The only drivers who

4   submitted declarations in support of the motion for certification were the Plaintiffs,

5   and they do not even favor the mandatory break times advocated by their counsel.

6       Lastly, employees can file individual lawsuits, including small claims actions.

7   In fact, other similar cases are already pending,[8] and while Plaintiffs therein also seek

8   to represent classes relating to break issues, they also seek recovery on an individual

9   basis, and thus have the desire to control their own litigation.

10      Plaintiffs' request for certification must fail because adequate alternatives exist

11  and they have not shown that there are plausible class-wide methods of proof

12  available to prove their claims.  *Maddock v. KB Homes*, 2007 U.S. Dist. LEXIS

13  58743, at **7, 19 (C.D. Cal. July 9, 2007).

14

15      **E.    Plaintiffs' Injuries Are Not Typical Of The Class, Nor Are Plaintiffs**

16          **Adequate Representatives.**

17      Rule 23(a)(4) requires that the representative plaintiffs in a class action

18  adequately protect the interests of those absent class members they purport to

19  represent.  *Allied Orthopedic Applicances, Inc. v. Tyco Healthcare Group L.P.*, 2007

20  U.S. Dist. Lexis 95761, *83 (C.D. Cal. December 21, 2007).  A class representative

21  must possess the same interest and suffer the same injury as the class members.  *In re*

22  *Beer Distribution Antitrust Litigation*, 188 F.R.D. 549, 554 (N.D. Cal. 1998).  Most

23  courts share the view that "a class cannot be certified when its members have

24  opposing interests or when it consists of members who benefit from the same acts

25  alleged to be harmful to other members of the class."  (citation omitted) *Tyco*, 2007

26

27  [8] *Bibo v. FedEx*, C07-2505 THE (N.D. Cal.) and *Forrand, Karamian, Green, Colon v.*
    *FedEx*, C07-4676 THE (N.D. Cal.) (change of venue to the C.D. Cal. recently
28  granted).

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION        CV07-5011 DSW
                                                                              (PJWx)

1   U.S. Dist. Lexis 95761 at *84.  Their interests in such a case are actually or potentially

2   antagonistic to, or in conflict with, the interests and objectives of other class members.

3   Id. at **83-84.

4        Plaintiffs here allege a technical violation only with respect to the taking and

5   timing of breaks, seeking a statutory payment of one hour's pay.  Plaintiffs have not

6   alleged an injury in fact.  Indeed, Plaintiffs never demanded the extra pay, because,

7   presumably, the timing of breaks never bothered them, at least until they learned of

8   the settlement in *Foster v. FedEx*.[9]  Potential class members, and even Plaintiffs, do

9   not want the breaks forced upon them.  Most, if not all drivers, do not have interests

10  that are aligned with Plaintiffs (assuming forced breaks are truly what Plaintiffs

11  desire), nor have the drivers suffered injuries typical of the Plaintiffs' alleged injuries,

12

13  i.e. a technical violation because they were not forced to take a break by a specific

14  time.  The drivers prefer flexibility in the taking and timing of their breaks.

15       Plaintiffs are not qualified to represent the interests of the class because they

16  apparently do not understand the result if they are successful-that the remaining

17  workforce will likely be forced to continue under the current break requirements in

18  exchange for a pittance of an individual recovery.  Each work day Plaintiffs and the

19  class members, will have to continuously plan all their work in order to stop and take

20

21  a break by a specific time, at all costs, for the sake of complying with an absurd

22  technical interpretation of the law.  Such a result is untenable to many potential class

23  members.  Certification should thus be denied.

24

25  [9] *Foster* is the class action referenced in Plaintiffs' motion at p. 4:15-19, which
    absolutely limits courier-Plaintiffs' limitations period.  *Foster* involved hotly
26  contested state court litigation of various wage and hour issues and there was no
    decision on the merits.  Incredibly, the court in *Foster* found that one instance of
27  failure to pay for services rendered results in class liability without any further inquiry
    or individualized proof on liability, basically subjecting FedEx to strict liability for the
28  class if Plaintiffs proved a single violation.

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

## IV.   CONCLUSION

Based upon the foregoing, Defendant Federal Express Corporation respectfully requests that the Court deny Plaintiffs' motion for certification.


Dated:  February 11, 2008                    Respectfully submitted,


By: _____/S/_____
        David S. Wilson, III
        Sandra C. Isom

        Attorneys for Defendant
        FEDERAL EXPRESS CORPORATION

FEDERAL EXPRESS
CORPORATION
2601 MAIN STREET
SUITE 340
IRVINE, CA 92614

35
DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION       CV07-5011 DSW
(PJWx)