UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

PRIORITY SEND

| Case No. | CV 07-5011 DSF (PJWx) | Date | 2/26/08 |
|---|---|---|---|
| Title | Vincent Brown, et al. v. Federal Express Corporation, et al. | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Yvette Louis | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) Order DENYING Plaintiffs' Motion for Class Certification and ORDERING Defendant to Show Cause Why Individual Claims Should Not Be Remanded to State Court

This matter is before the Court on Plaintiffs' Motion for Class Certification. Plaintiffs Vincent Brown, Jose Robert Rojas, Deborah Snyder, Charles Walker, Mark B. Tovsen, Robert Arman, John O'Neil, Andre D. Lawson, and Gregory A. Sorrells seek certification of a subclass of Ramp Transport Drivers ("RTDs") and a subclass of Courier Drivers ("Couriers") that were allegedly denied meal breaks and rest breaks in violation of California wage and hour laws. Having considered the papers submitted by the parties and having heard the oral argument of counsel, the Court DENIES Plaintiffs' Motion for Class Certification.

## I. FACTS[1]

Defendant Federal Express Corporation ("FedEx") is a Delaware-based corporation in the business of shipping packages and other freight to its customers on an express basis. (Compl. ¶ 15; Decl. of Eva M. Brown in Opp'n to Mot. for Class Certification ("Brown Decl.") ¶ 3.) Plaintiffs and the putative class members are current and former non-exempt hourly RTDs and Couriers employed by FedEx during the four

---

[1] For purposes of this Motion only, the Court accepts the facts alleged in the Complaint as true.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

years preceding the filing of this action.  (Compl. ¶ 22.)

    A.  Types of FedEx Drivers

    FedEx's truck fleet consists of different types of vehicles operated by different classifications of drivers.  (Brown Decl. ¶ 5.)  These drivers include RTDs and Couriers.  (Compl. ¶¶ 23-24.)  Couriers are employed at approximately 80 locations in California, and RTDs are employed at approximately 34 locations in California.  (Decl. of Amanda R. Adams in Supp. of Def. Federal Express Corp.'s Opp'n to Pls.' Mot. for Class Certification ("Adams Decl.") ¶ 3.)

    There are four types of RTDs: (1) station to ramp/ramp to station RTDs, also known as shuttle drivers; (2) heavyweight couriers, also known as pick-up and delivery RTDs; (3) long-haul RTDs; and (4) hostlers, also known as yard mules.  (Decl. of Elizabeth D. Mason in Supp. of Def. Federal Express Corp.'s Opp'n to Pls.' Mot. for Class Certification ("Mason Decl.") ¶ 14.)  Each type of RTD performs different job duties.

    Shuttle drivers use eighteen wheel tractor trailers to shuttle freight between FedEx airport facilities, or "ramps," certain high volume customer locations, and stations where freight is sorted and loaded onto smaller delivery vans and trucks for delivery to its final destination.  (Id. ¶ 17.)  Shuttle drivers typically work in nine hour shifts.  (Id. ¶ 21.)  During the first four and one half hours, those on the morning shift normally must make two round trips between a ramp and a station so that freight can be processed and delivered on time.  (Id. ¶ 22.)  After this time, shuttle drivers engage in other tasks that FedEx asserts are less time sensitive.  (Id. ¶ 25.)  Evening shift drivers engage in similar tasks, but in reverse order.  (Id. ¶ 28.)

    Like Couriers, heavyweight couriers deliver freight between stations and customers, except that their freight is heavier, they average only 12 stops per day (as opposed to the average one hundred stops made by Couriers), and they drive eighteen wheel trucks.  (Id. ¶ 31.)  They generally make deliveries in the morning and pick-ups in the afternoon.  (Id. ¶ 32.)  Some heavyweight couriers cover larger geographic areas than others.  (Id. ¶ 33.)  Those that cover smaller geographic areas have more frequent deadlines for deliveries.  (Id.)  Heavyweight couriers handle additional, "on-call" pick-ups and deliveries as they arise.  (Id. ¶ 34.)

    Long-haul RTDs transport freight in eighteen wheelers between airports or sorting facilities in one city and airports or sorting facilities in another city.  (Id. ¶ 44.)  Long-haul RTDs typically drive to a half-way point between the two cities, where the freight is handed over to another long-haul RTD.  (Id. ¶ 45.)  They thus typically have only one stop per day.  (Id.)

    Hostlers do not go out on the road, but instead move trailers around at facilities.

(Id. ¶ 47.)  They do not make pick-ups or deliveries.  (Id.)  Sometimes RTDs will perform a combination of some or all of these functions during a work shift.  (Id. ¶ 50.)

Couriers generally make deliveries in the morning and pick-ups in the afternoon and average 100 stops per day.  (Brown Decl. ¶ 11.)  Their routes vary – some are rural or mountainous while others are urban; some are primarily residential, while others are commercial.  (Mason Decl. ¶ 54.)  Couriers are given stops per hour goals, which vary by route.  (Id. ¶ 56.)  The number, size, shape, and weight of the packages they deliver vary by day.  (Id. ¶ 59.)  Couriers also make unscheduled, "on-call" pick-ups during the day.  (Brown Decl. ¶ 12.)

### B.  FedEx's Alleged Failure To Provide Meal Periods and Rest Periods

Plaintiffs contend that FedEx was committed to making a large number of deliveries on time and devoted insufficient resources to this task.  (See Compl. ¶ 25.)  As a result, RTDs and Couriers were put under excessive pressure to make deliveries as quickly as possible, such that they were unable to take meal breaks and rest breaks within the time required by law.  (Id. ¶¶ 25-26.)  Plaintiffs also contend that FedEx failed to pay an additional one hour of pay to RTDs and Couriers who missed their meal breaks and/or rest breaks.  (Id. ¶¶ 27-28.)

## II.  LEGAL STANDARD

Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure.  Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  The party seeking certification must satisfy all requirements of Rule 23(a), id. at 1234, which are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The party seeking certification must also show that it satisfies one of the three provisions of Rule 23(b).  Valentino, 97 F.3d at 1233.  A class may be certified under Rule 23(b)(1) if the prosecution of separate actions would create a risk of inconsistent judgments.  Rule 23(b)(2) certifications are appropriate where the party opposing the class has acted or refused to act on grounds generally applicable to the class, justifying injunctive or declaratory relief.  A class may be certified under Rule 23(b)(3) where

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

questions of law or fact common to members of the class predominate and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Rule 23(c)(1) directs the court to determine "[a]t an early practicable time"[2] whether to certify an action as a class action. At this stage of the proceedings, the Court must accept the factual allegations in the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975). However, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160 (1982) (internal quotation marks omitted). Thus, "[i]n reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 168 (3d Cir. 2001). The proponent of the class bears the burden of demonstrating that class certification is appropriate. In re N.D. Cal., Dalkon Shield IUD Prods. Liab. Litig., 693 F.2d 847, 854 (9th Cir. 1982).

### III. DISCUSSION

To obtain certification, Plaintiffs must meet the requirements of Rule 23(a), as well as one of the three alternative requirements of Rule 23(b). Valentino, 97 F.3d at 1233. The Court concludes that class certification is inappropriate because Plaintiffs have not met the requirements of Rule 23(b)(3), the only basis for class certification they assert.

Rule 23(b)(3) permits class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Here, individual issues predominate over common issues, and the class action is not a superior method for adjudicating Plaintiffs' controversy.

**A. Predominance**

---

[2] In 2003 this language was adopted to replace the former guideline: "as soon as practicable after commencement of an action." Fed. R. Civ. P. 23(c)(1)(A), Advisory Committee Notes, 2003 Amendments. This change reflects the view that additional time may be required to conduct discovery. "A critical need is to determine how the case will be tried. An increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Since this analysis presumes that common issues of fact or law have been established pursuant to Rule 23(a)(2), commonality alone is not sufficient to satisfy Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis. . . . Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy.

Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 612 (C.D. Cal. 2005) (internal citations and quotations omitted).

"To determine whether common issues predominate, this Court must first examine the substantive issues raised by Plaintiffs and second inquire into the proof relevant to each issue." Jimenez v. Domino's Pizza, Inc., 238 F.R.D. 241, 251 (C.D. Cal. 2006). Plaintiffs assert claims for failure to provide rest periods and meal periods required under California law, as well as a claim under California Business and Professions Code § 17200 et seq. deriving from those same violations. (See Compl. ¶¶ 35-46.)

The parties do not dispute that Plaintiffs can prevail on their rest period claim if they demonstrate that FedEx did not "provide" or "authorize and permit" rest breaks. See 8 C.C.R. § 11090(12). However, the parties dispute what must be proved in order to demonstrate that Defendant did not provide meal breaks. Defendants argue that employers must only make meal breaks available to employees, and that employees may choose whether or not to take such breaks. Plaintiffs argue that California law requires employers to ensure that meal breaks are actually taken. The Court agrees with Defendants.

### 1. Employers Must Provide Meal Breaks, But Need Not Require that They Be Taken

California Labor Code Section 226.7 ("Section 226.7") provides:
(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.
(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

California Labor Code Section 512(a) ("Section 512(a)") provides:

An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.  An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

The applicable Industrial Welfare Commission Wage Order here contains the following meal time provision:

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee.

(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

(C) Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to.  The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided.

8 C.C.R. § 11090(11) (2008).

None of these provisions supports Plaintiffs' position that Defendant was required to ensure that Plaintiffs took meal breaks.  Section 226.7(a) states that "[n]o employer shall <u>require</u> any employee to work during any meal or rest period."  (Emphasis added.)

This is clearly inconsistent with Plaintiffs' position. Section 226.7(b) imposes liability "[i]f an employer <u>fails to provide</u> an employee a meal period in accordance with an applicable order of the Industrial Welfare Commission." (Emphasis added.) Section 512(a) likewise states that "[a]n employer may not employ an employee for a work period of more than five hours per day <u>without providing</u> the employee with a meal period of not less than 30 minutes." (Emphasis added.) The word "provide" means "to supply or make available." <u>Merriam Webster's Collegiate Dictionary</u> 937 (10th ed. 2002). It does not suggest any obligation to ensure that employees take advantage of what is made available to them.

  The language of the Industrial Welfare Commission Wage Order applicable to Defendant comes closest to imposing a duty to enforce meal breaks, stating that "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes." 8 C.C.R. § 11090(11). However, this language is also consistent with an obligation to provide a meal break, rather than to ensure that employees cease working during that time. The California Supreme Court has described the interest protected by meal break provisions, stating that "[a]n employee forced to forgo his or her meal period . . . has been deprived of the right to be free of the employer's control during the meal period." <u>Murphy v. Kenneth Cole Prods., Inc.</u>, 40 Cal. 4th 1094, 1104 (2007). It is an employer's obligation to ensure that its employees are free from its control for thirty minutes, not to ensure that the employees do any particular thing during that time. Indeed, in characterizing violations of California meal period obligations in <u>Murphy</u>, the California Supreme Court repeatedly described it as an obligation not to force employees to work through breaks.[3] <u>See id.</u> at 1102 ("The trial court concluded that KCP did not provide Murphy the required meal or rest periods and accordingly awarded Murphy an 'additional hour of pay' for each day Murphy was forced to work through a meal or rest period."), 1104 ("Section 226.7, subdivision (b) requires that employees be paid 'one additional hour of pay' for each work day that they are required to work through a meal or rest period. . . . An employee forced to forgo his or her meal period . . . loses a benefit to which the law entitles him or her.").

  Requiring enforcement of meal breaks would place an undue burden on employers whose employees are numerous or who, as with Plaintiffs, do not appear to remain in contact with the employer during the day. <u>See</u> <u>White v. Starbucks Corp.</u>, 497 F. Supp. 2d 1080, 1088-89 (N.D. Cal. 2007). It would also create perverse incentives, encouraging

---

[3] This characterization by the California Supreme Court is instructive, rather than conclusive, because the California Supreme Court was not considering this issue directly, but instead determining whether payments for missed meal break and rest break periods should be considered wages or penalties. <u>See</u> <u>Murphy</u>, 40 Cal. 4th at 1099.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

employees to violate company meal break policy in order to receive extra compensation under California wage and hour laws.  Id.  In the absence of California Supreme Court precedent, this Court must apply the rule it believes the court would adopt under the circumstances.  See Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 663 (9th Cir. 1998).  The Court does not believe that the California Supreme Court would adopt the enforcement rule advocated by Plaintiffs.

The Court is not persuaded of the contrary by the holding in Cicairos v. Summit Logistics, Inc., 133 Cal. App. 4th 949, 962 (2005), that "employers have 'an affirmative obligation to ensure that workers are actually relieved of all duty.'" (Quoting Dept. of Industrial Relations, DLSE, Opinion Letter No. 2002.01.28 (Jan. 28, 2002) at 1.) Decisions of the California courts of appeal are not themselves binding.  Guebara v. Allstate Insurance Co., 237 F.3d 987, 993 (2001).  Cicairos in turn relies exclusively on a non-binding opinion letter by the California Department of Labor Standards Enforcement.  See Murphy, 40 Cal. 4th at 1106.  In any event, the above language is consistent with an obligation to make breaks available, rather than to force employees to take breaks.  Indeed, in Cicairos, the court found liability where an employer simply assumed breaks were taken, despite its institution of policies that prevented employees from taking meal breaks.  133 Cal. App. 4th at 962-63.

### 2. Individual Issues Predominate

Because FedEx was required only to make meal breaks and rest breaks available to Plaintiffs, Plaintiffs may prevail only if they demonstrate that FedEx's policies deprived them of those breaks.  Any such showing will require substantial individualized fact finding.

FedEx drivers' duties vary significantly by job classification.  Although FedEx may have consistent policies that apply across job classifications, their impact on employees' ability to take breaks necessarily depends on each individual's job duties. Analysis of whether drivers' job duties precluded taking meal and rest breaks would vary widely among Couriers, who make one hundred stops a day, heavyweight couriers, who make only 12, long haul RTDs, who travel long distances to make one stop, and hostlers, who do not leave FedEx facilities at all.  (See Mason Decl. ¶¶ 14, 17, 31, 44, 47.)

In addition to differences in sheer volume of work, different types of drivers experience different ebbs and flows in workload during the day, leading to a different analysis of when they might take breaks.  For example, it appears that shuttle drivers have most of their time-sensitive work concentrated at the beginning or end of their shifts (id. ¶¶ 22-23), while heavyweight couriers have two to three delivery deadlines spaced throughout the day.  (Id. ¶¶ 31, 33-34.)

Different types of drivers are also subjected to different levels of monitoring.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

Couriers and heavyweight couriers are given stops per hours goals, which they must document. (Id. ¶¶ 55-56, 58.) It appears that Couriers may be subjected to higher expectations of efficiency than heavyweight couriers. (Id. ¶ 58.) It is unclear whether other types of drivers have similar objective monitoring of their volume of work that would put pressure on them to skip required breaks. This also leads to an individualized inquiry.

Even within classifications, individual drivers work on different routes. Some routes are urban, while others are rural or mountainous. (Mason Decl. ¶ 54.) Some cover larger geographic distances than others. (Id. ¶ 33.) Some involve highly concentrated commercial areas, while others involve residential areas with greater distances between stops. (Id. ¶ 54.) Moreover, the demands of the job change with the volume of deliveries presented on any given day. (Id. ¶ 59.) The number, shape, and weight of packages vary. (Id.) Couriers and heavyweight couriers may be called on to make "on-call" pick-ups that increase their workload. (Id. ¶ 34; Brown Decl. ¶ 12.) FedEx's expectations for drivers, such as the stops per hour goals given to Couriers or heavyweight couriers, also vary along with a number of factors. (Mason Decl. ¶ 56.) Determining whether the specific expectations for any given driver sufficiently account for variances in route and daily fluctuations such that drivers may take required breaks would require a highly individualized inquiry.[4]

The drivers also work in many different facilities across California. (Adams Decl. ¶ 3.) In addition to introducing variations in the routes and conditions that drivers must face, the variation in facilities introduces the additional complexity of understanding the management policies unique to each facility and how they impact drivers' schedules.

Faced with this variance, Plaintiffs propose no method of common proof that would establish that FedEx's policies prevent drivers from taking required breaks, regardless of their individual circumstances. Although Plaintiffs assert in the Complaint that FedEx's policies put such pressure on drivers that they cannot take required breaks, they propose no means of proving this claim on a class-wide basis. The Court thus concludes that the highly individualized factual inquiries just described predominate over the few legal and factual issues shared by the proposed class. Plaintiffs advocate for class certification primarily based on the efficiency of using time sheets as a common method of proof for establishing the number of meal breaks and rest breaks missed by the class. Whether this is a sufficient means of actually establishing when breaks missed is in dispute, as the time sheets are recorded by drivers who may or may not accurately record the time of breaks. (Compare Decl. of Ronald J. Carlson in Supp. of Def. Federal

---

[4] For this reason, Plaintiffs' proposal to certify four subclasses (Mot. 3-4) would not change the predominance of individual issues here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

Express Corp.'s Opp'n to Mot. for Class Certification ¶¶ 3, 5, 7 (stating that drivers often estimate their break times at the end of the day) with Decl. of Robert Firman in Supp. of Pls.' Mot. for Class Certification ¶ 6 (stating that his time records are accurate).)  But even assuming that the records are accurate, the resources that would be expended on determining the reason for missed breaks would exceed those saved by classwide determination of the number of breaks missed.  Assuming that the timesheets are accurate, it would take little time for the number of missed breaks to be established in separate actions.

### B.  A Class Action Is Not a Superior Method of Adjudication

Pursuant to Rule 23(b)(3), certification is appropriate only if the Court finds "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) also sets forth specific factors that the court may consider when determining whether class certification is the superior option:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

The first three factors do not weigh heavily on either side of certification, but the fourth consideration persuades the court that class treatment is not a superior means of adjudicating Plaintiffs' claims.  A class action addressing the varied individual factual issues raised by Plaintiffs is likely to be unmanageable.  Even where there is a common nucleus of fact regarding a defendant's conduct, "[i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1192 (9th Cir. 2001).  Here, there are likely more than 5,500 potential class members.  (Decl. of Art Mendoza in Supp. of Def. Federal Express Corp.'s Notice of Removal ¶ 4, Ex. A.)  These class members are spread among 80 facilities for Couriers and 34 locations for RTDs.  (Adams Decl. ¶ 3.)  In order to prevail, each will have to demonstrate that he or she was not able to take breaks required by California law.

Without a viable method of common proof for evaluating the ability of 5,500 class members to take breaks as required by law, the Court will be mired in over 5000 mini-trials regarding individual job duties and expectations.  The difficulties in managing such a wide-ranging factual inquiry persuade the Court that class treatment is not a superior

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

**PRIORITY SEND**

method for resolution of the class members' potential claims.  Moreover, because class treatment here would nonetheless require individual class members to establish the reason for their missed breaks, class members would face many of the same difficulties in motivation and expenditure of resources that they would encounter in separate actions.  In addition to this, they would face the inevitable delay imposed by waiting for the resolution of thousands of individual factual claims in the class action.  Class treatment is not a superior means of adjudicating this controversy.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification is DENIED.  Defendant is ORDERED to show cause in writing by March 17, 2008 why Plaintiffs' individual claims should not be remanded to the Superior Court of California for the County of Los Angeles.  Defendant may request additional time to engage in jurisdictional discovery, provided that such a request is made on or before the above deadline.  Plaintiffs may submit a response in the same time period.  The parties are reminded that courtesy copies are to be delivered to Chambers.  Failure of Defendant to respond by the above date may result in the Court remanding this action to state court.

The Court further orders the Court Clerk promptly to serve this order on both parties.

IT IS SO ORDERED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

**PRIORITY SEND**

Initials of Deputy: YRL